IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKI HAYTER, : | |
|       Plaintiff, : | |
| : | No. 4: 03-CV-0978 |
| v. : | |
| : | (Judge McClure) |
| LEWISBURG AREA SCHOOL : | |
| DISTRICT, : | |
|       Defendant. : | |

**M E M O R A N D U M**

April 18, 2005

**BACKGROUND:**

On June 12, 2003, plaintiff Vicki Hayter initiated this employment discrimination action against her former employer, defendant Lewisburg Area School District (the School District). Hayter has complied with state and federal administrative prerequisites.

Hayter alleges eight claims in her complaint under Title VII of the Civil Rights Act of 1964 and other related laws: (1) gender discrimination in violation of Title VII, specifically 42 U.S.C. § 2000e-2(a) (Count I): (2) age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., as enforceable under the Fair Labor Standards Act, 29 U.S.C. § 215 et

-1-

seq., specifically 29 U.S.C. §§ 215, 623(a) (Count II); (3) retaliation for complaint of gender discrimination in violation of Title VII, specifically 42 U.S.C. § 2000e-3(a) (Count III); (4) retaliation for opposition to illegal practice under the ADEA, 29 U.S.C. § 623(d) (Count IV); (5) discrimination based on gender in violation of the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 955(a) et seq., (Count V); (6) discrimination based on account of age in violation of the PHRA, specifically §955(a) (Count VI); (7) retaliation for opposing illegal practices–gender in violation of the PHRA, specifically §955(d) (Count VII); and (8) retaliation for opposing illegal practices-age in violation of the PHRA, specifically §955(d) (Count VIII).

On or about December 10, 2003, the court denied the School District's motion to dismiss. Now before the court is the School District's motion for summary judgment. For the following reasons, we will grant the School District's motion.

**DISCUSSION:**

### I. The Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact in dispute and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Beers-Capitol v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001).

An issue is "genuine" if a reasonable jury could find for either party. See Anderson, 477 U.S. at 249. "Material" facts are those that might affect the outcome of the case. Id. at 248.

Initially, the moving party bears the burden of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. "It can discharge that burden by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party points to evidence demonstrating that no genuine issue of material fact exists, the nonmoving party has the duty to set forth specific facts showing that a genuine issue of material fact does exist and that a reasonable fact-finder could rule in its favor. Ridgewood Bd. of Educ. v. N.E., ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Although "[s]peculation and conclusory allegations do not satisfy this duty," Ridgewood, 172 F.3d at 252 (citing Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995)), all inferences are made in a light most favorable to the nonmoving party. See Saucier v. Katz, 533

U.S. 194, 201 (2001); Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).

## II. Statement of Relevant Facts

We briefly recite the relevant, material facts. To the extent the parties disagree over the factual details, we draw all inferences in a light most favorable to Hayter, the nonmoving party.

Born on July 16, 1939, Hayter was originally hired by the School District as a teacher's aide in 1972. (Def.'s Stmt. of Facts, Rec. Doc. No. 22, at ¶1.) Sometime thereafter, she was promoted to Supervisor of Food Services. Allegedly, all of her performance evaluations were favorable until 1998.

On July 1, 1998, the School District hired Ronald Kabonick as Director of Administrative Services. (Id. at ¶6.) Although younger than Hayter, Kabonick's position made him Hayter's superior. Kabonick was dissatisfied with Hayter's performance throughout the 1998-1999 school year, and documented the points of Hayter's performance with which he was dissatisfied. Hayter claims that she performed admirably throughout that school year and that Kabonick singled her out for unfair treatment, such as by not granting Hayter an extra vacation or comp day when a similarly situated employee, David Wagner, Supervisor of Buildings and Grounds, received an extra comp day. Hayter also claims that Kabonick permitted

Wagner to leave school grounds on certain occasions but denied Hayter permission to do so on one occasion. (See Pl.'s Stmt. of Facts, Rec. Doc. No. 25, at ¶¶7, 12-14, 25,-38.)

At the end of the 1998-1999 school year, in June 1999, Kabonick gave Hayter an unfavorable evaluation at her annual performance review. She alleges that this evaluation was the worst she had ever received. The unfavorable evaluation meant that Hayter was ineligible for a raise in salary. Kabonick then required Hayter to write out a list of goals. Hayter alleges that Kabonick never evaluated Wagner's performance, and neither required Wagner nor any other employees to write out goals. (Id. at ¶¶39-68.)

On January 5, 2000, Hayter filed gender and age discrimination claims against the School District with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC). She filed amended complaints with the PHRC and EEOC on February 15, 2000. Allegedly, the complaints were served on the School District no later than May 2000.

Hayter claims that Kabonick, subsequent to learning of the complaints, requested Hayter to write up five more goals for herself for the 2000-2001 school year, and to provide him with a self-evaluation form in anticipation of her annual performance evaluation.

On June 19, 2000, Kabonick gave Hayter another unsatisfactory evaluation in which Kabonick cited, among other things, Hayter's failure to meet with the student council, failure to complete inventory and financial projects, refusal to submit a five-year plan, failure to supervise her employees properly, and a general inability to cooperate with the school board. (Id. at ¶¶69-73, 78-87, 91-92.)

On the same day, Dr. Torok, superintendent of the School District, allegedly put Hayter on a review period until September 30, 2000. Hayter, though, claims that the School District normally terminates all employees after two unsatisfactory evaluations. She also claims that if she continued to remain employed by the School District after July 1, 2000, she would have become ineligible for a retirement incentive program. She therefore resigned on June 29, 2000 because she felt that the School District would terminate her employment after September 30, 2000, at which time she would be ineligible for the retirement package. (Id. at ¶¶93-104.)

### III. Analyzing Hayter's Claims

Preliminarily, we note that "Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts," so we bear Hayters' PHRA claim in mind while we evaluate her Title VII and ADEA claims. Collins v. TRL, Inc., 263 F. Supp. 2d 913, 918 n.3 (M.D. Pa. 2003) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)); see Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d

Cir. 2002).

## **A. Hayter's Gender and Age Discrimination Claims**

Title VII prohibits an employer from discharging or otherwise discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits, inter alia, an employer from terminating the employment of an employee who is at least forty years of age because of the employee's age. See 29 U.S.C. §§ 623(a), 631. Under both Title VII and the ADEA, a plaintiff can show intentional discrimination by presenting either: (1) direct evidence of an employer's discriminatory animus; or (2) indirect evidence sufficient to make out a prima facie case on which an employer's discriminatory animus can be inferred. See, e.g., Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); Fakete v. Aetna, Inc., 308 F.3d 335, 337-38 (3d Cir. 2002); Anderson v. Consolidated Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002). The parties agree that this is an indirect evidence case of discrimination. In such cases, the plaintiff bears the initial burden of establishing a prima facie case of discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), by a preponderance of the evidence. Sarullo., 352 F.3d at 797 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)), cert. denied, -- U.S. --, 124 S. Ct. 2392 (2004). For Title VII and ADEA claims, a

plaintiff must show that: (1) she belongs to the protected class, i.e., female or at least forty years of age at the time of the allegedly adverse employment action; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances surrounding her termination give rise to an inference of discrimination.  See Sarullo, 352 F.3d at 797; Monaco v. American Gen. Assurance Co., 359 F.3d 296, 300-01 (3d Cir. 2004).[1]

If a plaintiff establishes a prima facie case, then the defendant may rebut the case by "articulat[ing] some legitimate, nondiscriminatory reason" for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802; Sarullo, 352 F.3d at 797.  If the defendant carries this light burden, then the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reasons are pretextual, and are not the real motivation for the adverse employment action.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981); McDonnell Douglas, 411 U.S. at 804.  To show that a defendant's proffered reasons are pretextual, a plaintiff must present sufficient evidence from which a fact-finder

---

[1] It is helpful to a plaintiff's case to show that she was replaced by a member outside of her protected class(es), but failure to do so is not fatal.  See Sarullo, 352 F.3d 789, 798 n.7; Davis v. Tammac Corp., 127 F. Supp. 2d 625, 633-34 (M.D. Pa. 2000) (Vanaskie, C.J.); Grabosky v. Tammac Corp., 127 F. Supp. 2d 610, 618-20 (M.D. Pa. 2000) (Vanaskie, C.J.).

"could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); accord Hicks, 509 U.S. at 510-11; Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000).

A plaintiff need not present affirmative evidence that the defendant's proffered reasons are pretextual if he or she can "demonstrate such weaknesses or implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could find them unworthy of credence." Fuentes, 32 F.3d at 765; accord Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 147-48 (2000); Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 283 (3d Cir. 2001).  It is the court's duty to determine whether the plaintiff's evidence is sufficient for a reasonable fact-finder to discount the defendant's proffered reasons for the employment action, thereby precluding summary judgment for the defendant. Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc)).

For purposes of its summary judgment motion only, the School District concedes that Hayter satisfies the first two prongs to establish prima facie gender

and age discrimination claims, but argues that she voluntarily resigned and therefore did not suffer an adverse employment action. The School District also argues with respect to Hayter's gender discrimination claim only that she cannot meet the fourth prong.

Regarding the third prong, adverse employment action, Hayter alleges that she was constructively discharged. Although a constructive discharge qualifies as an "adverse employment action," so does a range of other actions less severe than discharge as well. See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir.1999) ("[T]he relevant question with respect to [the plaintiff's] Title VII and PHRA claims is whether he suffered some form of 'adverse employment action' sufficient to evoke the protection of Title VII and the PHRA. Obviously something less than a discharge could be an adverse employment action."). We do not dwell on whether Hayter adduces sufficient facts to establish constructive discharge because she also shows that, among other things, she did not receive a raise, which may constitute an adverse employment action. See Stanziale, 200 F.3d at 105-06.

Regarding the fourth prong of her prima facie claims of age and gender discrimination, Hayter argues that various minor incidents collectively give rise to an inference of age and gender discrimination, namely, that Wagner, a male, received a raise when Hayter did not, that Wagner was not evaluated at all while Hayter was

stringently evaluated, and that Wagner generally enjoyed more courtesies, such as being able to leave campus at certain times when Hayter was denied permission to do so.  All of Hayter's evidence of unlawful discrimination is decidedly thin.  Nonetheless, the court cannot say that no reasonable fact-finder could draw an inference of unlawful gender discrimination from these incidents.  Therefore, the burden shifts to the School District to rebut Hayter's prima facie cases of gender and age discrimination.

  The School District seeks to meet its burden by referencing numerous issues concerning Hayter's job performance evidenced in her 1999 and 2000 evaluations, such as her failure to complete work assignments, her tardy submission of goals, her leaving work without permission on one occasion, her making false statements, her failure to supervise properly other employees, her failure to care properly for cafeteria equipment, and her general mishandling of her myriad responsibilities.  (Def.'s Br. Supp. Mot. Summ. J., Rec. Doc. No. 21, Ex. C at 1-5; Ex. D.)  The School District also cites the numerous complaints it received about Hayter's performance from parents, students, and other employees.  (See id., Ex. C at 3.)  These reasons proffered by the School District suffice to shift the burden back to Hayter to show that these reasons are pretextual.  See Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 330 (3d Cir. 1995) (accepting similar performance-

based reasons for adverse employment action); Glanzman v. Metropolitan Mgmt. Corp., 290 F.Supp.2d 571, 580-81 (E.D. Pa. 2003) (same).

To rebut the reasons articulated by the School District, Hayter first argues that a reasonable fact-finder could disbelieve the School District's articulated reasons. For instance, Hayter claims that all of the School District's reasons are drawn from her 1999 and 2000 evaluations, which contained so many inaccuracies that the evaluations should be disbelieved as a whole. Specifically, she claims that her 1999 and 2000 evaluations contain unverifiable assertions regarding Hayter's alleged dishonesty and regarding the supposed complaints made about Hayter by parents, students, and other employees. Hayter also argues that Kabonick included in one of Hayter's evaluations a "slanted reading" of a memorandum Hayter wrote to the student council that Kabonick cited as evidence of Hayter's failure to support the administration. She further contends that Kabonick mischaracterized Hayter's explanations for certain performance related occurrences as being lies and as a result Kabonick wrongly implied in Hayter's evaluations that she was dishonest. Finally, Hayter asserts that she always received positive evaluations in the past up until Kabonick became her superior. Hayter suggests these discrepancies, along with the School District's dissimilar treatment of herself and Wagner, reveal the School District's underlying discriminatory animus towards her.

We find Hayter's argument unconvincing.  The alleged discrepancies Hayter cites in her 1999 and 2000 evaluations, individually and collectively, fail to discredit the School District's articulated reasons for its employment decision.  Hayter must do more than suggest that her evaluations reflect poor, subjective choices by employer.  Federal courts cannot second guess an employer's business decisions.  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc).  Rather, Hayter "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."  Id. at 1109.

Keeping this in mind, none of Hayter's disagreements over the veracity of certain statements in her 1999 and 2000 evaluations helps her case.  Hayter's reference to past positive evaluations is not probative because whether she performed favorably in the past does not establish pretext.  See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1993).  Similarly, Hayter's subjective belief that the School District drew improper conclusions from certain incidents does not establish pretext.  Just because she believes that her employer drew improper conclusions from incidents that admittedly occurred, or that she believes others besides herself were to blame, does not suggest that the conclusions contained in her 1999 and 2000 evaluations were artifices to mask

discrimination. Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."), overruled in part on other grounds, Hicks, 509 U.S. 502. Her criticisms of her employer's conclusions "amount to little more than the schoolground retort, 'Not so,' an approach which . . . does not create an issue of material fact." Fuentes, 32 F.3d at 766.

Equally unavailing is Hayter's assertion that Kabonick could not substantiate the sources of the numerous complaints he allegedly received about Hayter's performance. His inability to recall the source of all the complaints is not evidence of pretext. Nothing suggests Kabonick fabricated the complaints. In fact, at his deposition Kabonick remembered at least two persons from whom he received complaints. (See Rec. Doc. No. 21, Ex. B at 140-43.) An employer that honestly believes complaints about an employee are true may reasonably rely on those complaints in reaching an employment decision. See Braithwaite v. Timken Co., 258 F.3d 488, 493-94 (6th Cir. 2001). Kabonick's corroboration of at least two complaints, coupled with Hayter's failure to show that Kabonick fabricated or had reason to disbelieve the complaints, discounts the complaints from being regarded as pretextual. See Braithwaite, 258 F.3d at 494; Fuentes, 32 F.3d at 766-67.

Even assuming certain aspects of Hayter's 1999 and 2000 evaluations are

unfair or untrue, Hayter fails to address all the reasons listed in those evaluations that the School District now cites for its employment decision. For instance, Hayter fails to address the School District's assertions that Hayter failed to clean the grill, failed to manage properly the financial aspects of the cafeteria, and failed to report problems she was having with employees. (See e.g., Rec. Doc. No. 22, Ex. C at 2-4; Ex. D at 1-4.) Thus, although Hayter stresses that she performed some tasks satisfactorily, she fails to attack other specific reasons cited by the School District for its decision. Hayter essentially argues that notwithstanding her unsatisfactory performance of some tasks, she performed other tasks satisfactorily. This amounts to an improper attack on the wisdom of the School District's decision. See Keller, 130 F.3d at 1108; Anderson v. Stauffer Chem. Co., 965 F.2d 397, 403 (7th Cir. 1992).

Hayter correctly argues that the School District's different treatment of Hayter and Wagner, a similarly situated employee, can be evidence of discriminatory animus. Hayter points out that she was evaluated twice and had to submit goals after her first evaluation, while Wagner was neither evaluated nor had to submit goals, that Wagner received a raise and an extra comp day but she did not, and that she was denied permission to leave early one day while Wagner was always granted permission to leave early when he so requested.

First, the evidence contradicts Hayter's assertion that Wagner was neither evaluated nor required to submit goals. (See Def.'s Reply Br., Rec. Doc. No. 29, Ex. I.) Second, the School District did not give Hayter a raise because of her poor evaluations. As discussed above, no evidence shows the School District tailored or concocted those evaluations to mask its discriminatory intent. Consequently, the only evidence of inconsistent treatment is that, unlike Wagner, Hayter did not receive a comp day and was denied permission to leave early one time, and that Kabonick wrongly implied in Hayter's evaluations that she was dishonest. The court believes this evidence is too thin to create a triable issue of pretext. As noted by the Supreme Court,

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. This is just such a case as that the Supreme Court alluded to in Reeves. Accordingly, we will enter summary judgment for the School District on Hayter's Title VII and ADEA claims.

## B. Hayter's Retaliation Claims

The School District argues that Hayter cannot make out a prima facie retaliation claim under either Title VII or the ADEA.  Hayter does not argue this issue in her briefs and therefore the School District's motion is unopposed as to Hayter's retaliation claims.  <u>See</u> M.D. R. 7.6.  Even if Hayter opposed the School District's motion in this respect, we would find that no facts suggest any causal link between her filing claims with the EEOC and PHRC and her subsequent evaluation in June 2000, as she asserts that the School District treated her the same from 1998 onwards.  <u>See</u> <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997) (requiring causal nexus between employee's engagement in protected activity and employer's adverse action taken against employee).  Thus, no facts show that the School District treated Hayter differently after she engaged in protected activity, i.e., filed her administrative complaints.

## CONCLUSION:

Hayter fails to muster sufficient evidence to discredit the School District's articulated legitimate, nondiscriminatory reason for terminating Hayter's employment, and fails to muster sufficient evidence suggesting that an invidious discriminatory reason was more likely than not a motivating or determining cause of

the School District's action.  Hayter does not oppose the School District's motion as to her retaliation claims, and in any event, those claims would fail as a matter of law.  Accordingly, the court will grant the School District's motion for summary judgment.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICKI HAYTER,<br>    Plaintiff,<br><br>v.<br><br>LEWISBURG AREA SCHOOL DISTRICT,<br>    Defendant. | :<br>:<br>:   No. 4: 03-CV-978<br>:<br>:   (Judge McClure)<br>:<br>:<br>:<br>: |

### O R D E R

April 18, 2005

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. The School District's motion for summary judgment (Rec. Doc. No. 21), is granted.

2. Final judgment is entered in favor of the School District.

3. The clerk is directed to close the case file.

   s/ James F. McClure, Jr.

James F. McClure, Jr.
United States District Judge